E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RAJESH SRINIVASAN (Cal. Bar No. 310510)
Assistant United States Attorney
Criminal Division
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7416
    Email: rajesh.srinivasan@usdoj.gov

Attorneys for Respondent
BRIAN LAMMER, Warden

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| ANTOINE AROCHE, | No. 5:22-cv-01414-JLS-JEM |
|---|---|
| Petitioner, | RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |
| v. | |
| BRIAN LAMMER[1], Warden, | |
| Respondent. | |

    Respondent Brian Lammer, Warden of the Federal Correctional Complex at Victorville, California, by and through his attorney of record, the United States Attorney for the Central District of California, hereby files this motion to dismiss Antoine

---

[1] The only proper Respondent in a habeas petition is the petitioner's immediate custodian at the time of filing, in this case, Brian Lammer, Warden, Federal Correctional Complex in Victorville, California.

- 1 -

Aroche's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. This motion is based on the attached memorandum of points and authorities, the Declaration of Yolanda Sanchez, the files and records in this case, and such other evidence or argument as may be requested by the Court.

DATED: October 12, 2022    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

 /s/
RAJESH SRINIVASAN
Assistant United States Attorney

Attorneys for Respondent
BRIAN LAMMER, Warden

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Petitioner Antoine Aroche ("Petitioner"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging the BOP's application of First Step Act ("FSA") time credits. See ECF-2 at 4. Petitioner contends that "the statute makes clear that the BOP must award credit for all activities that fall under the broad definitions of [evidence-based recidivism] programs EBRR and [productive activities] PAs, regardless of whether they appear in the FSA Approved Programs Guide or whether they were assigned based on an assessed need." Id. Petitioner also claims that he should earn 10 to 15 days of time credit for every 30 days of participation in programming, regardless of the length of time in which he participated on any given day. Id. at 7. Lastly, Petitioner contends that Congress intended for inmates to earn time credits without delay after their initial risk and needs assessments and completion of qualifying programming. Id. at 11.

The Court need not--and should not--address the merits of Petitioner's claims because he has failed to exhaust his administrative remedies and there is no basis for excusing that failure. Petitioner had, and still has, at his disposal a well-established administrative process to address his claim. Because Petitioner failed to complete the administrative remedy process and that process remains open to him, the Petition should be dismissed.

**II. FACTS**

**A.   Petitioner's Background**

On April 12, 2017, Petitioner was sentenced in the Northern District of California to a term of 120 months imprisonment for possession with intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). See Declaration of Yolanda Sanchez ¶ 4(a) ("Sanchez Decl."). Assuming he earns all remaining available Good Conduct Time credit and completes substance-abuse treatment, Petitioner's current projected release date is August 7, 2024. Sanchez Decl. ¶ 4(b); see 18 U.S.C. § 3621(e). Petitioner is currently housed at the Federal Correctional Institution II in Victorville, California ("FCI II Victorville"), see Sanchez Decl. ¶ 4(c), which is located within the Central District of California.

**B.   Earned Time Credits Under the First Step Act**

The First Step Act of 2018 amended 18 U.S.C. § 3621, which governs the calculation of federal sentences. The First Step Act requires the Attorney General to develop a "risk and needs assessment system" for federal inmates. 18 U.S.C. § 3632(a). The First Step Act dictates that this system should include "evidence-based recidivism reduction programming" or "productive activities" and offer incentives for completing such programs or activities. See 18 U.S.C. § 3632(a)(6). These incentives include credits toward pre-release custody -- custody that provides "a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Id. at §§ 3624(c)(1), 3632(d)(4).

1 In accordance with these mandates, BOP issued the "Prisoner
2 Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN").
3 See Herring v. Joseph, No. 20-249, 2020 WL 3671375, at *3 (N.D.
4 Fla. June 22, 2020), report and recommendation adopted in part,
5 2020 WL 3642706 (N.D. Fla. July 6, 2020). The BOP has published
6 a First Step Act Approved Programs Guide which lists all
7 approved evidence-based recidivism reduction programs and
8 productive activities. Sanchez Decl. ¶ 7. The guide is
9 available online at https://www.bop.gov/inmates
10 /fsa/docs/fsa_guide_0822.pdf. Id. Among other information, the
11 Guide provides a description of each evidence-based recidivism
12 reduction program or productive activities and the hours of
13 program credits for participating and completing them. Id. The
14 guide also lists the specific need that participation and
15 completion of the program addresses. Id.

**C.    The BOP's Administrative Remedy Process**

17 The BOP's administrative remedy process is "well-
18 established." United States v. Wilson, 503 U.S. 329, 336
19 (1992). The BOP's Administrative Remedy Program provides
20 federal inmates with a procedure by which they may seek review
21 of any aspect of their confinement, including the computation of
22 credits. See 28 C.F.R. § 542.10; see also Wilson, 503 U.S. at
23 335-36.
24 The Administrative Remedy Program contains several well-
25 defined steps. First, an inmate must seek informal resolution
26 of an issue at their institution of confinement using Form "BP-
27 8". Id. § 542.13. If that fails, the inmate must then file a
28 formal request with the Warden using Form "BP-9". Id. § 542.14.

1  If dissatisfied with the Warden's response, the inmate may then
2  use Form "BP-10" to appeal to the Regional Director of the
3  region in which the inmate is confined within 20 days of the
4  Warden's response.  Id. § 542.15.  If dissatisfied with the
5  Regional Director's response, the inmate may appeal to the BOP's
6  Office of General Counsel in Washington, D.C. using Form "BP-
7  11".  Id.  A final decision from the Office of General Counsel
8  is the last step of the BOP's Administrative Remedy Process.
9  Id. § 542.15(a).  Thus, the administrative process is not
10 complete until either (a) the Office of the General Counsel
11 replies, on the merits, to the inmate's appeal, or (b) the
12 response is not forthcoming within the time allotted for a
13 response.  See id. § 542.18.
14       Inmates are made aware of this administrative process as
15 soon as they enter BOP custody.  Each inmate committed or
16 transferred to a BOP institution is required to participate in
17 the institution's Admission and Orientation Program, during
18 which the inmate learns about various areas of the institution,
19 including the BOP administrative remedy program.  Sanchez Decl.
20 ¶ 5.  Inmates also receive an Admission & Orientation Handbook.
21 Id.  The handbook outlines the Administrative Remedy Process and
22 explains that inmates can obtain the required forms for this
23 process from their assigned Correctional Counselor or Unit Team
24 member.  Id.
25       Assistance is made available to the inmate throughout this
26 process.  "An inmate may obtain assistance from another inmate
27 or from institution staff in preparing a Request or an Appeal.
28 An inmate may also obtain assistance from outside sources, such

- 4 -

1 as family members or attorneys." 28 C.F.R. § 542.16(a).
2 Further, the regulations make clear that BOP staff must make
3 assistance available "for inmates who are illiterate, disabled,
4 or who are not functionally literate in English." Id.
5 § 542.16(b).

6     Just as the BOP has obligations under these regulations, so
7 too does the inmate. The inmate's request or appeal must
8 satisfy the requirements of the BOP's Administrative Remedy
9 Program. 28 C.F.R. § 542.17. And "[i]nmates have the
10 responsibility to use this Program in good faith and in an
11 honest and straightforward manner." Id. § 542.11(b).

12 **D.**    **Petitioner's Administrative Submissions**

13     Petitioner has filed two administrative remedies for
14 receiving or applying FSA time credits. Sanchez Decl. ¶ 6.
15 First, Petitioner's request number 1070795-F1 requests time
16 credits for productive activities from 2017-2021; it was
17 received by the Federal Correctional Institution in Herlong,
18 California ("FCI Herlong") on February 26, 2021. Sanchez Decl.
19 ¶ 6(a). Petitioner's request was closed because Petitioner was
20 provided with information or an explanation in the institution's
21 response. Id. Second, Petitioner's administrative remedy
22 request number 1120345-F1 requested the application of FSA time
23 credits; it was received by the Federal Correctional Institution
24 in Sheridan, Oregon ("FCI Sheridan") on May 13, 2022. Sanchez
25 Decl. ¶ 6(b). Petitioner's request was denied substantially in
26 full. Id. Petitioner never appealed either of these
27 administrative remedy responses to the Regional Director or
28 Office of General Counsel. Sanchez Decl. ¶ 6(c). Therefore, he

failed to exhaust his administrative remedies; nonetheless, that process remains fully open to Petitioner. Sanchez Decl. ¶ 6.

### III. LEGAL ARGUMENT

#### A. Dismissal Is Required Because Petitioner Has Not Exhausted His Administrative Remedies

Courts require habeas petitioners, as a prudential matter, to exhaust administrative remedies before seeking relief under § 2241. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds; Reno v. Koray, 515 U.S. 50 (1995); see also Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001) ("[S]ection [2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.") (footnote omitted), abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curium)("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court."). The failure to exhaust administrative remedies is an appropriate basis for dismissal of a habeas petition. Martinez, 804 F.2d at 571 (affirming dismissal of habeas petition for failure to exhaust administrative remedies); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).

The exhaustion requirement is not a mere formality. Requiring exhaustion aids judicial review by allowing the administrative agency to develop a factual record, apply its

expertise, and correct its own errors, thereby conserving court resources and avoiding unnecessary judicial intervention. See Ruviwat, 701 F.2d at 845.

These considerations are particularly strong with respect to applying FSA time credits. First, the BOP has special expertise in analyzing its own policies and the legal precedent governing sentence computation and projected release dates. See U.S. v. Wilson, 503 U.S. 329, 335 (1992) ("After a district court sentenced a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."); see also Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003); Pavlovich v. Johnson, No. CV 16-0749 PSG (SS), 2016 WL 3410195, at *3 (C.D. Cal. May 23, 2016), report and recommendation adopted, No. CV 16-0749 PSG (SS), 2016 WL 3410362 (C.D. Cal. June 14, 2016). Second, waiving exhaustion would encourage inmates to deliberately bypass the BOP's administrative scheme to receive their credits. Pavlovich, 2016 WL 3410195, at *4; Noriega-Lopez, 335 F. 3d at 881. Finally, allowing inmates to bypass the administrative process prevents the BOP from correcting its own mistakes and thus obviating the need for judicial review. See also Jones, 549 U.S. at 219 (exhaustion benefits courts by "reducing litigation to the extent complaints are satisfactorily resolved") (citations omitted).

Here, the Court should dismiss the petition because Petitioner failed to exhaust his administrative remedies for receiving FSA time credits. Although the Petitioner filed two administrative remedies relating to either the receipt or

application of FSA time credits, he has not appealed either of the responses that he received from his Wardens. Sanchez Decl. ¶ 6; see 28 C.F.R. § 542.15. Thus, his § 2241 petition is not ripe for consideration by this Court. See Castro-Cortez, 239 F.3d at 1047.

Dismissal of the Petition is particularly warranted given the concerns underlying the exhaustion requirement. Here, Petitioner raised new concerns in his Petition, and in his haste to rush into federal court, he deprived the BOP of "a fair and full opportunity" to consider – let alone adjudicate – these concerns. Cf. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (discussing the administrative remedy process in the context of a civil rights action). Specifically, Petitioner's Petition contends that his PATTERN score is incorrect and that he deserves credit for FSA programs that he has not completed. (Dkt. 2 at 13.) Instead of filing a § 2241 petition, Petitioner should have filed an administrative remedy request challenging the computation of his PATTERN score and thereby affording the BOP the opportunity to investigate and respond. Unless petitioner follows this process, this Court will lack the factual development needed to review the merits of Petitioner's claim for FSA time credit.

This is a textbook case for requiring exhaustion. To conserve judicial resources, avoid unnecessary judicial intervention, and discourage circumvention of the administrative remedy process, this Petition should be dismissed, and Petitioner should first pursue his claim administratively.

## IV. CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court dismiss the petition because Petitioner has not exhausted his administrative remedies.

DATED: October 12, 2022

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/ *Rajesh R. Srinivasan*
RAJESH SRINIVASAN
Assistant United States Attorney

Attorneys for Respondent
BRIAN LAMMER, Warden